The next case this morning is 5 22 0 2 9 0 people versus ward arguing for the appellant is in some numb arguing for the athlete is Becky Ray. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning, counselors. Good morning. Good morning, Your Honor. We appreciate your patience. We have a very full zoom docket this morning, so it's taken some time to get to you. But we've read your briefs already. We're looking forward to your arguments. Miss Nama, you already proceed. Yes, Your Honor. You may do so. Thank you. May please the court council assistant appellate defender and son numb on behalf of Michael Ward. This case arose after a shooting occurred between five individuals on the second floor balcony or the outer area of a motel six in Effingham County. Based on the shooting, the state charged Mr Ward with three counts, aggravated discharge of a firearm, unlawful possession of a weapon by a felon and unlawful possession of firearm ammunition by a felon. A jury found him guilty on all recounts. However, due to the multitude of errors that developed during trial, an improper and prejudicial message was repeatedly conveyed to the jury. Um, and that is that Mr Ward was either a bad person, a criminal with numerous felony convictions in his background, or someone whose liberty was rightfully restricted. And on appeal, Mr Ward raises three arguments. The focus today will be on the issue of whether Mr Ward's trial attorney or defense counsel provided an effective assistance. There are three sub issues to this argument of whether a defense counsel erred by one failing to stipulate to his felon status to failing to sever the serious charge from the felon status charges and three whether it was error to object or failed to object to the law enforcement officers improper lay opinion and identification testimony. So turning to the first sub issue defense counsel's failure to stipulate to Mr Ward's felon status before the jury was deficient performance at issue was a single felony conviction that Mr Ward had had been convicted of a felony assault in the second degree in the state of Minnesota. That's the only conviction at issue. Based on United States Supreme Court, Illinois Supreme Court and even this court's precedent, defense counsel was required to stipulate to his felon status, but counsel did not. And this failure brought about immense repercussions in this case. Rather than telling the jury that he had a previous, he had a single previous felony conviction, the jury actually heard that Mr Ward had a felony conviction in Illinois, in Minnesota, that he had a felony conviction for assault in the second degree, an aggravated assault in the second degree, and that he had a felony assault in the second degree in the state of Minnesota. Between the trial court reading the charging instrument to the jury at the start of trial, to the trial court reading the jury instructions that also included this wrong information, almost verbatim at the end of trial, and with the jury taking the written jury instructions back during deliberations, this was all error, all error that could have been avoided had trial counsel stipulated to his felon status. And I do want to get to the other issues, but I do want to pause here and talk about prejudice. So there's a significant risk in cases like this, that jury will use that the jury will use knowledge of prior convictions or a conviction to determine the guilt of a defendant in the current unrelated offense. And for prejudice here, if from the competent evidence admitted, the jury entertained any doubt, any doubt that Mr Ward was guilty, it would be difficult, if not impossible, to remove this impression of that pervaded his trial from the start with the jury selection to the end with jury instructions. Here he was, Mr Ward was prejudiced not only because the evidence was closely balanced, but also considering this theme that he's a bad person. How is the evidence closely balanced? I know you repeat that in your brief, and of course the state takes issue with that. Um, I mean, there was video of an individual outside of the of the hotel room or motel room. Um, there was evidence from the girlfriend's statement. Um, there was evidence, uh, that, uh, I mean, there was a lot of a lot of eyewitness and video statements, testimony or evidence that was admitted. And I'm not sure how we, uh, are supposed to look at that as being closely balanced. So if you could just elaborate a little bit on that for me. Yes, Your Honor. So I want to touch upon the eyewitness issue. There are no real eyewitnesses. So as this court recalls, there was that video or the videos from the motel six. And from there you can tell that there's, I believe, four individuals that drive into the parking lot that go upstairs to the second floor and kind of hover around a room. And then someone, uh, an an individual comes out of the room and the shooting occurs. At that point, the John Doe's, they're never identified. No statements are given. No, um, no. Uh, so there's no, there's no real eyewitness testimony because all four John Doe's, they kind of scatter, but they scatter inside the motel. They either go into a different room on the floor, um, or rooms on the floor. So they were there and the police kind of arrived pretty quickly after. But no one, uh, no one actually finds these John Doe's or identifies the John Doe's. So there are no real eyewitnesses. The first floor clerk, the one that was sitting in the front desk, uh, she testifies that she sees, um, a group of men in the second floor, uh, when the shooting or after the shooting occurred. So no eyewitness to the shooting actually testified at trial. We do have the video, um, and we do have autumn, uh, autumns test or autumns testimony autumns phone call with Mr Ward. But nothing there specifically says that this is the motel six. Um, it seems like autumn lives. Her residence is the motel, so we can't tell for sure if it's this motel. Plus, that video talks about some sort of fight breaking out, but it's not clear as if as to whether it's this fight or a different fight or if it's the shooting or not. And your honors, I want to remind the court that there's no direct evidence. I want to talk a little bit about what evidence does not exist because, as, uh, Justice Barbera stated, there's there's circumstantial evidence. There's no direct evidence that Mr Ward is the person in red. So we're missing the gunshot residue, uh, testing. So right after Mr Ward is, uh, arrested at the zone, the fitness center. That's about, I believe, like an hour or two later, the officers arrest him. He's taken immediately to the jail. No gunshot residue of his hands, his clothes, his identifications of the John Doe's. And we also don't have a gun or any ammunition or bullets on Mr Ward when he is arrested. When he is found, none of that is on him. But there are casings found at the site of the shooting. There's blazer three casings. And in the defendant's room, there's a duffel bag with blazer ammunition. 3 80 ammunition in his bag. Is that not correct? Slightly. So it is correct that that that great duffel bag was in autumn's room, but no one directly connects that great duffel bag to Mr Ward. No one said that he was the only person that was allowed in the room other than autumn. Autumn said it wasn't her bag, but no one directly ties the great duffel bag to Mr Ward. There's no identification in there. There's no fingerprint. There's no DNA. There's nothing that's found in the duffel bag itself that actually connects to Mr Ward. Again, autumn said it wasn't hers, but there's she said she was dating the dependent and he was in and out of the room and he'd been in and out of the room that day. That's correct. So autumn does say that she dated him on and off and that he was there that day on and off. So we do have that evidence. And again, there's circumstantial evidence, your honors. But the question here isn't whether, um, there was sufficient evidence to find him guilty. We're talking about the closely balanced nature. And I want to go back to that felon status is status issue because, um, as the party site, we're talking about cases like people versus more people versus Walker, people versus Taylor and people versus, um, Tolliver and old chief. All of these cases, when the jury hears about their even the specific conviction, they're at least correct convictions, and it's one or two. In Mr Ward's case, the the convictions that actually came in. There's a wrong. There's wrong convictions. There's non existent convictions. Um, that Illinois, that's a random felony conviction that was that occurred in Illinois. And on top of that, we also, um, we also want to talk about the see. I also want to talk about, um, one second. Mr. The fact that the officers I'm running out of time, but the fact that the officers, when they identify Mr Ward in court, it's based on the facial recognition with the tattoos, and that's not visible anywhere in the record other than the officer's testimony. And from that video after he's arrested, not before, not during the shooting, not in the motel sixes video. I'll come back in rebuttal. Yoners. Thank you. It's rare. You're ready to proceed. Yes, sure. Thank you. I was trying to get unmuted. Uh, Becky Ray for the people. Um, I would like to start by addressing Justice Barbarossa's question about the closely balanced evidence. I do believe in this case that, um, the evidence was not closely balanced. It was, um, greatly against the defendant. And here are the reasons why, um, autumn Scryer's testimony established that the defendant was at the location of the motel six visiting her on the day of the shooting. Now, she wasn't clear about the time, but that wasn't asked of her what time. Um, but she did indicate that she had been dating him off and on for several months. He had visited her at the motel where she was staying. Um, they're apparently in the defendant's reply brief. They've conceded for the first time that there's no issue that the shooter was wearing red. Well, Micah Ward was wearing red when they discovered him at the zone fitness later that evening, he was wearing all red, a sweatsuit type outfit, a red sweatshirt, red sweatpants, uh, mostly black tennis shoes. And you can see that in the, um, video recording where the defendant was clothing. And while you can't tell the color while he's in the squad car, you can tell the color when he exits the squad car. Looking through to the back window, you can see that that outfit is red. It also wasn't there also testimony or I'm sorry, then the video from the hotel, the surveillance video also indicate that the shooter had long, long hair and that, uh, you know, the long hair, although at trial apparently he had chosen a different hairstyle that was not long. Your honor is correct. Yes. Um, and the video at the motel also showed the shooter wearing red and you can clearly see in the squad car video that the defendant had the dreadlocks which were described at trial and the shooter also had long hair. So similar clarification, the hotel video doesn't show him as the shooter does. It just shows the guy in red running away from the scene. You can see the muzzle flashes and the person who has, um, the officer identifies that as being the time that the shooting occurred and that person, the shooter is wearing red and the defendant concedes in his reply brief that there's no question that the shooter at the motel was wearing red. Um, to continue on with the not closely balanced evidence, the office, one of the officers testified, I believe it was Detective Pulse Apple, testified that it appeared that the defendant retreated or the suspect, the shooter retreated into room 238, which is Autumn Shryer's room, um, that there were multiple shell casings found on the balcony of the second floor between rooms 228 and 240. And as Justice Vaughn noted, those were blazer casings and there were blazer casings found in the gray duffel bag in Autumn Shryer's room. There was also a Remington casing that was found on the second floor, I believe it was the second floor balcony as well, and there was a Remington casing found in the gray duffel bag. So two types of, two different types of ammunition were found outside of the the same brand were found in the duffel bag in Autumn Shryer's room. And additionally, as your honors have noted, there was video that depicted this defendant, Micah Ward, wearing the red, all red outfit just like the shooter at the motel had worn. There was testimony from the man whom the defendant had approached at the gym asking about a phone charger that the man in red appeared distraught, nervous, shaken up. He even made a comment to the man at the gym who he asked for the phone charger that he was staying at the Econo Lodge, which we know is, became the Motel 6, so same location, same hotel, and that he was admission at that hotel as well. So he is tied to that location by his own statements to this gentleman at the Zone Fitness Gym. Additionally, there was the recorded phone call between Autumn Shryer and the defendant where they discuss an incident being recorded by a hotel camera, and Autumn Shryer made the statement to the defendant that you knew, the defendant made a statement about that was recorded on camera, and Autumn Shryer responds after that that you knew there were cameras at the hotel. So clearly, whilst they didn't discuss, you know, which hotel, I think, circumstantially, based on all the evidence, given that Autumn was residing at the Motel 6, the shooting had occurred at the Motel 6, and the defendant had been arrested for a shooting at the Motel 6. So I think it's clear what hotel they were talking about. This phone conversation occurred two days after the defendant's arrest, so in close proximity to the time that this shooting and the defendant's arrest would have occurred. So I think it's clear, circumstantially, what hotel they were talking about, even though it wasn't specified in the phone conversation. Also, there, the officers did recover a handgun that was sometime later in an unrelated traffic stop, and it was in the possession of a minor at that time, and the minor explained where that gun had been located, and it was located near the north stairwell to the Motel 6, like in between the Motel 6 and another motel in the area, but the north stairwell is where you can see the shooter run down after he leaves. He reenters the motel room, which is described as appearing to be Autumn's motel room, exits a short time later, runs down the north stairwell with something in his hand, which the officer at trial described as appearing to be, he didn't say it was a handgun, and they, the police did recover that handgun. Now, counsel is correct that there wasn't any direct evidence linking the defendant to that weapon. There was no gunshot residue, and Detective Holzapfel admits he dropped the ball on that. He said he just didn't think. I think Ms. Ray froze up. Can you hear me now? Yes. Yes. Okay. Detective Holzapfel admitted that he dropped the ball and didn't do the gunshot residue test, but I take issue with counsel's argument about the lack of evidence can sustain a conviction. In this case where the evidence is not closely balanced and greatly goes against the defendant, it is sufficient to sustain his conviction. Now, I understand it's not a sufficiency of the evidence argument. However, the closeness of the evidence or lack thereof of it being close goes to whether or not the defendant's attorney provided effective assistance. He has to prongs of Strickland. One of them is that his counsel did not offer competent assistance under the prevailing professional norms, and one of them is that he was prejudiced. He has to prove both of those, and in this case with the evidence overwhelming like it was, he cannot prove the prejudice prong, and so his Strickland claim fails. He can't prove that his counsel provided ineffective assistance to him because the evidence against him was overwhelming, albeit circumstantial. Circumstantial evidence, again, is evidence. Testimony is evidence, and the testimony puts this defendant at the motel. His own admission to the guy at the gym puts him at the motel on the day of the shooting wearing the same clothing that the shooter was seen as wearing and apparently exiting and entering the room of the woman that he was dating who was living at that motel. So, I think that based on the evidence in this case, I know that based on the evidence in this case, the defendant's claim for ineffective assistance fails. Thank you, your honors. If you have any questions, I'll happily entertain those questions. Justice Barberis? No, I don't believe so. Justice Bowie? Not at this time. All right. Thank you, Ms. Wray. Thank you. Ms. Nam Rabatel? Yes, your honors. So, the closely balanced standard, this court should err on the side of fairness for closely balanced and grant a new trial because even if there's sufficient evidence to convict or sustain a conviction, here we're talking about what evidence exists, what doesn't exist. And even with the evidence, as Ms. Wray stated, it's all circumstantial evidence. I also want to go back to the tattoos that I was talking about before. It is notable that all of the witnesses that identified, well, not all, but the witnesses that identified him at trial, they do so based on facial recognition and his facial tattoos. Again, nothing from the shooter at the Motel 6, nothing establishes that that person has these distinct facial tattoos that Mr. Ward has. Also, I do want to point out the jury questions. So, again, jury questions aren't, you know, conclusive. They can't really say something definitively, but the jury did ask two questions here, and they want, or they asked to see the jail, or sorry, the police squad car backseat camera video, and they wanted to hear the jail phone call again. At the very least, at a minimum, they were looking to see Mr. Ward again and hear his voice with Autumn again. At the very least, we can argue that the evidence here, based on everything that doesn't exist, like the gunshot residue, the firearm not being found on this person, found later, and it's circumstantial evidence that this firearm that's found was the one used at the Motel 6. Again, there's no direct link. So, based on the fact that all of the evidence is circumstantial, and the jury wanted to see the video and hear the call again, at a minimum, it doesn't have to be that we don't have to meet the preponderance of the evidence standard, or we don't have to show that it's more than 50%. Here, we're asking this court to err on the side of fairness, especially where the jury was told repeatedly about Mr. Ward's convictions that don't even exist. The fact that he's a bad person, they saw him in handcuffs twice because they saw the video twice. They also heard on the phone call that he was asking or he needed money for his commissary because he was in jail. They were told repeatedly here that he was either in jail, handcuffed, bad person, or a convicted felon for multiple felons. Based on all of these errors, the evidence here was closely balanced when there is no direct link. It's all circumstantial, and again, we ask this court to err on the side of fairness here, especially because compared to the cases that we cite, again, Moore, Taylor, Tolliver, Old Chief, Mr. Ward was, or the jury in Mr. Ward's case was told that he had like five prior convictions. That doesn't exist in the other cases. We have a weird, unique case here where the jury was repeatedly about convictions that don't even exist. So again, unless your honors have any questions, we ask this court to remand for a new trial based on counsel's deficient performance. I do have one question with regard to that. Yes, your honor. Your third argument concerning the court's, or the counsel's, failure to object to Holzapfel's testimony of the hotel surveillance videos, explaining or narrating it, I guess, explaining what it was supposedly depicting. What's your one-minute argument on that with regard to the court not taking precautionary, you know, hearing what that was going to be prior to allowing it to go before the jury? Yes, your honor, and again, the state admits that there was no pre-trial questionnaire about Detective Holzapfel. And at trial, the argument is that he doesn't have a better, better, I guess, reason to testify to what's in the video when the jury can see it. So he testifies about the Motel 6. He wasn't there when the shooting happened. He's not a staff of the Motel. If the staff from the Motel 6 testified, I think that'd be different. But this is a detective, an officer, who testifies about a Motel 6 that he's not, you know, familiar with, about events that he wasn't present for. And he identifies Mr. Ward through the facial tattoos, which, again, is not in those videos. So he's testifying to things that were post-event, post-video, things that happened after his, after Mr. Ward's arrest. Is it permissible for us to find that that, even if we agree that, you know, the trial court erred in that regard, that that's, didn't prejudice the outcome? Well, we argue because the evidence is closely balanced that it did prejudice the outcome. Because there were no protections, there's no jury instructions as well. I think we argue that too. If there were protections given to the jury, like jury instructions, about some of these errors, then the errors would have been minimized. But we have too many errors, and they're all based on counsel's inactions or failure to act here. Unless there's any other questions. Thank you, Your Honors. Justice Bowie, questions? No questions. Thank you. All right. Thank you. We appreciate your arguments. We'll consider the briefs and the arguments you made today. We will take the matter under advisement and issue a decision in due course.